UNITED STATES of America, Appellee,

v.

Leslie LOVE and Mark Anthony Cloyd, Appellants.

Nos. 80–1177, 80–1178.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1980.

Decided Aug. 12, 1980.

---

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSON,* Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Mark Anthony Cloyd and Leslie Love appeal their convictions pursuant to a jury verdict returned on January 17, 1980, finding them guilty of bank robbery in violation

---

* The Honorable William C. Hanson, United States Senior District Judge, Northern and Southern Districts of Iowa, sitting by designation.

of 18 U.S.C. § 2113(a) and (d) (1976).[1] We affirm the convictions.

On appeal, defendants jointly assert as error the District Court's [2] failure to suppress certain identification evidence. Separately, defendant Cloyd argues that the District Court erred by requiring him to wear before the jury items of apparel allegedly worn by the bank robber. Defendant Love argues that the District Court erred by denying his motion for reduction of bond pending trial, and by denying his motion for severance of the trial.

## I. Facts

On November 2, 1979, at approximately 11:00 a.m., two unmasked black males entered a Home Savings Association office located in Kansas City, Missouri, the deposits of which were insured by the Federal Savings and Loan Insurance Corporation, and perpetrated therein an armed robbery. The robbery lasted approximately three to four minutes, and the robbers took approximately $11,474. A surveillance camera took sequential pictures during the robbery.

On November 3, 1979, employees of the Home Savings Association who had been present during the crime were shown a photo spread consisting of mug shot pictures of seven black males. Each employee separately viewed the photo spread without conferring with the others. One employee, Nancy Cunningham, positively identified a picture of Cloyd as being one of the robbers, and stated that a picture of Love resembled a possible participant. Two other employees identified the picture of Cloyd as one of the robbers. Following the photo spread display, the witnesses were shown pictures taken during the robbery by the surveillance camera.

Love and Cloyd were arrested on November 6, 1979. After informing the eyewitnesses that suspects had been apprehended, law enforcement officers requested the witnesses to come to the police station to view a lineup. Each witness then separately viewed the lineup of five black males, including Cloyd and Love. The witnesses did not speak to other witnesses during the process. Nancy Cunningham identified Cloyd as one of the robbers, and tentatively identified Love. The two other employees, who had previously identified Cloyd's photo, also identified him at the lineup. During the lineup procedure, Cloyd and Love were represented by an attorney. No objections were made to the lineup procedure.

A United States Magistrate,[3] on November 15, 1979, held a preliminary hearing and found probable cause to believe that defendants had committed the November 2 robbery. The magistrate fixed bail for Love at $50,000 cash or surety. On November 28, 1979, defendant Love next appeared before the magistrate following the return of an indictment on November 27, 1979. The magistrate again set bail at $50,000, whereupon Love, by and through his appointed counsel, moved for reduction of bail. On December 3, 1979, the magistrate issued a memorandum and order denying Love's motion for reduction of bond and setting forth the reasons why the bond was required to assure the appearance of Love.

Love then moved the court, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, to grant him a separate trial

1. 18 U.S.C. § 2113(a) states in relevant part:
   Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; * * *
   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
   18 U.S.C. § 2113(d) states:

   Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

2. The Honorable Elmo B. Hunter, United States District Judge, Western District of Missouri.

3. The Honorable Calvin K. Hamilton, Chief United States Magistrate, Western District of Missouri.

from that of his co-indictee, Cloyd. The District Court denied this motion without prejudice on December 12, 1979.

Defendant Cloyd filed a written motion to suppress in-court identification of him by the witnesses to the crime, on the basis that his identification resulted from procedures which were unnecessarily suggestive and conducive to mistaken identification. Love orally joined this written motion and a pretrial hearing was held on January 14, 1980. At this hearing the three employees who had made identifications and the Federal Bureau of Investigation agent assigned to the investigation of the robbery testified regarding the circumstances of the pretrial identifications. At the conclusion of the hearing, the District Court denied the motion to suppress, specifically finding that the photo spread and lineup were not unduly suggestive.

At the trial, the three employees who had previously made identifications of the defendants made in-court identifications corresponding to their previous identifications. They stated that they made the identifications on the basis of their recollections of the robbery. The Government additionally presented other evidence linking the defendants with the crime. During the direct testimony of employee Cunningham, the only eyewitness who identified both Cloyd and Love, the Government requested that the coat and cap, which she stated were similar to those worn by Cloyd during the robbery and which had been recovered from a car linked to Cloyd, be worn by him and exhibited to the jury. The car apparently was borrowed by Cloyd and used as the getaway vehicle. The Government also requested Love to wear the black felt hat that the witness stated was similar to the one worn by Love during the robbery. Over objection by defense counsel, the court instructed the defendants to wear the items of clothing as requested by the Government, and at the same time the Government gave the jury five of the surveillance photographs. After the jury rendered verdicts of guilty as to both defendants on February 29, 1980, the District Court sentenced each to the custody of the Attorney General for a period of twenty years.

## II. *Identification Evidence*

Defendants argue that the photograph identification procedure was impermissibly suggestive. Each photograph showed, along with other numbers, a numerical date. Defendants contend that because the two photographs of Cloyd and Love both bore dates in October of 1979, and because their photographs were the most proximate in time to the date of the robbery, the photo display was impermissibly suggestive. They also contend that the additional act of showing the surveillance photographs taken during the robbery to the witnesses immediately following the photo spread identification was unduly suggestive because it served to reinforce the identification made by the photo spread.

The last part of the identification procedure challenged by defendants is the lineup. They contend that because the witnesses were informed that the police had apprehended suspects, this suggested to the witnesses that they would view at the lineup the individuals whose photographs they had already been shown. Since only Love and Cloyd appeared in both the photo spread and the lineup, they contend that this created an impermissibly suggestive situation. Defendant Cloyd also argues that the lineup was unreliable because none of the other individuals in it resembled him.

■ The photographic identification procedure was not "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See United States v. Smith,* 602 F.2d 834, 837 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979), *quoting Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The dates on the photographs did not increase the chances of misidentification. The significance of the dates is succinctly demonstrated by the testimony of witness Cunningham who, when asked about the dates during cross-examination, testified that she hadn't noticed them. In other respects, the circumstances regarding

the photographic identification are substantially similar to those in *Simmons v. United States,* 390 U.S. 377, 382–86, 88 S.Ct. 967, 970–972, 19 L.Ed.2d 1247 (1968), where the testimony was found admissible.

■ Presenting a lineup to witnesses who have already viewed a photo spread does not constitute an unduly suggestive procedure, even though only two persons were represented in both displays. *See United States v. Cook,* 608 F.2d 1175, 1178–79 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Any unduly suggestive aspects of the coincidence of the two defendants in both the photo spread and the lineup would relate to both Love and Cloyd, yet two of the eyewitnesses identified only Cloyd. This bolsters our conclusion that the identification procedure itself did not induce the identifications made by the witnesses. Refreshing the witnesses' recollection by showing them the surveillance photos made during the robbery likewise does not render the procedure unduly suggestive. To the contrary, this process should serve to make subsequent identifications more accurate. *United States v. Bridgefourth,* 538 F.2d 1251, 1253 (6th Cir.1976); *United States v. Irby,* 517 F.2d 506 (4th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976). During the lineup itself, defendants were represented by counsel, who made no objections to the lineup's composition or the procedure utilized. Our independent review of the photographs of the lineup also lead us to the conclusion that its composition was not unduly suggestive.

As the Supreme Court stated in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977): "[R]eliability is the linchpin in determining the admissibility of identification testimony." Thus even were the identification procedures found unduly suggestive, the testimony of the Home Savings Association employees at the trial might still be admissible. *See United States v. Anderson,* 618 F.2d 487, 491–92 (8th Cir.1980); *United States v. Mears,* 614 F.2d 1175, 1177 (8th Cir.) *cert. denied,* 446 U.S. 945, 100 S.Ct. 2174, 64

L.Ed.2d 801 (1980). The factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ The robbery took three to four minutes, during which time the witnesses' attention was obviously focused upon the perpetrators of the crime. Employee Cunningham, prior to viewing the photo display, had provided the police with a fairly accurate description of the robbers, although she had tended to confuse the apparel worn by the two. The photo display took place the day after the crime. The lineup was presented a few days later. Each of the witnesses identified Cloyd with a high degree of certainty. Furthermore, even though defense counsel extensively cross-examined the witnesses regarding the effect of the identification procedures, they testified that their identifications were made on the basis of their recollection of the events occurring on November 2. Given the totality of the circumstances, the identification procedures cannot be found to have produced unreliable in-court identifications. Due process therefore did not require exclusion of the identification testimony. Defense counsel extensively cross-examined the witnesses, and the jury had the opportunity to decide whether the pretrial identification procedures should mitigate the weight to be accorded the identification testimony. Defendants do not question the sufficiency of the evidence presented to the jury.

### III. · *Wearing Specified Items of Apparel for the Jury's Inspection*

Cloyd argues that the District Court erred in ordering him to wear a jacket and hat allegedly worn by the robber during the robbery. Cloyd walked from the defense counsel table to the jury box and back to

the counsel table where he removed the items of apparel. Meanwhile, the jury viewed the surveillance photographs taken during the robbery. Cloyd challenges this order on the basis that the procedure was unduly suggestive, that its probative value was outweighed by unfair prejudice, and that Government counsel unfairly surprised the defense by the request. The Government responds that its request was proper because it presented the jury with relevant, non-testimonial evidence.

■■■ The admissibility of this evidence was within the discretion of the trial court, and its judgment will not be overturned on appeal absent an abuse of discretion. *See United States v. Matlock,* 558 F.2d 1328, 1332 (8th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977). In *United States v. Murray,* 523 F.2d 489, 492 (8th Cir.1975), this court found that during a trial for bank robbery a trial court properly required a defendant to place on his head a wig similar to the hairstyle of the robber and also similar in style to that which the defendant had in his possession when arrested, in order to assist the jury in determining whether the defendant was the person who had been photographed while perpetrating the robbery. The circumstances of this case are analogous. The District Court did not abuse its discretion by ordering Cloyd to wear the designated items of apparel.

### IV. *Reduction of Bond*

■ Defendant Love contends that his inability to secure release from custody prior to trial denied him the ability adequately to prepare his defense. This allegation is entirely conclusory and Love does not elaborate or indicate any assistance that he could have rendered had he been released, or any way in which his defense was deficient. The amount of the bond was not unreasonable. The magistrate provided ample justification for the necessity of the amount of the bond. At the time of Love's arrest he was on probation and was at liberty after two arrests on state felony charges only by virtue of two separate bonds posted on his behalf. He was not employed and the information concerning his residence conflicted.

### V. *Severance*

Defendant Love argues that he was entitled to a separate trial because the Government could present much stronger identification evidence against Cloyd than against him. He contends that the prejudice to him of a joint trial outweighed the inconvenience and additional expense of separate proceedings. *See* Fed.R.Crim.P. 14.

■■■ A motion to sever rests within the sound discretion of the trial court, and its judgment will not be reversed absent a showing of clear prejudice indicating an abuse of discretion. *United States v. Brown,* 605 F.2d 389, 393 (8th Cir.), *cert. denied,* 444 U.S. 972, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979); *United States v. Runge,* 593 F.2d 66, 73 (8th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). Defendant Love has not met his burden of showing prejudice by demonstrating that the jury was unable to compartmentalize the evidence related to him. Simply because the evidence may be more damaging against one defendant, a court is not required to separate the trials. *United States v. Williams,* 604 F.2d 1102, 1119 (8th Cir. 1979); *United States v. Fuel,* 583 F.2d 978, 987 (8th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Furthermore, defendant Love did not renew his pretrial motion for severance during the trial or at the conclusion of the trial. This constitutes a waiver of his right to present the issue on appeal. *United States v. Luschen,* 614 F.2d 1164, 1174–75 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980).

The convictions of defendants are affirmed.