**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kyle CORK, Defendant–Appellant.**

No. 01–2384.

United States Court of Appeals,
Sixth Circuit.

July 14, 2003.

BEFORE: BOGGS and DAUGHTREY, Circuit Judges; and OBERDORFER, District Judge.*

PER CURIAM.

Kyle Cork appeals his conviction for two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Cork challenges his conviction on the grounds that: (1) the evidence presented at trial was insufficient to support a guilty verdict, (2) the district court committed error by admitting certain evidence at trial and (3) Cork's trial attorney provided ineffective assistance of counsel. Cork also challenges on appeal the District Court's application of a sentencing enhancement for obstruction of justice under the United States Sentencing Guidelines § 3C1.1. For the reasons that

follow, we AFFIRM the conviction and sentence.

## I. FACTUAL BACKGROUND

A jury found Kyle Cork guilty of committing two bank robberies; the robbery of the First National Bank of Iron Mountain on December 8, 1999, and the robbery of the State Savings Bank in Manistique, Michigan on April 29, 2000. Evidence presented at trial established the following facts:

### A. The December 8, 1999 Robbery

On December 8, 1999 at approximately 9:00 a.m., a man with a "salt and pepper" mustache, wearing sunglasses, a grey hooded sweatshirt, and a tan vest, walked into the First National Bank of Iron Mountain and handed a note to one of the tellers. The note said "Bank Teller. I am deaf and mute. I need to make a withdrawal from my account. I need you to put all the money in your drawer in a paper bag. Do not make eye contact or do anything to alarm anyone. I am watching your every move.... I have someone watching for three minutes. And if you make any attempt to contact anyone you will be harmed." The man held his hand in the pocket of his vest. The teller who received the note filled a brown paper bag with the money in her drawer, approximately $6,795, and the man left the bank. Bank surveillance cameras recorded the incident.

Minutes after the bank robbery, Iron Mountain resident Lori Defiore observed a man in a vest walking down the street carrying a paper bag. His face was uncovered. At trial she identified that man as Cork. Cork was also identified by his step-

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Co-

lumbia, sitting by designation.

son Kenneth LaFavre from bank surveillance photographs taken during the December 8 robbery.

### B. *The April 29, 2000 Robbery*

On the morning of April 29, 2000. Kenneth LaFavre had arranged to take Cork to a doctor's appointment. However, when he awoke, he found that Cork had already left his house prior to the appointment.

On that same morning, a man wearing a nylon navy blue jacket, gray sweat pants, a gray hooded jacket with the hood up, a knitted cap underneath the hood, ski goggles and dark tennis shoes with white stripes entered the State Savings Bank in Manistique, Michigan and approached one of the tellers. As in the previous robbery, the man handed a note to one of the tellers that said "I am a mute. I cannot talk. . . . Give me all your money and put it in a bag." The man had a hand in the pocket of his coat. The man left the bank with the items from the teller's drawer including $7.460, mutilated currency, several silver certificates and two-dollar bills. Bank surveillance cameras photographed the man during the robbery.

Shortly after the robbery, a police officer responding to the bank's call observed a white extended cab van passing through the intersection near the Manistique bank. The van resembled one used by Cork during his employment with Zee Medical Supplies, a first aid and safety supply company.

In April 2000, Cork had $8.23 in his bank account. However, on April 30, one day after the Manistique Bank robbery, Cork paid his April rent, prepaid his May rent and lent money to LaFavre. Cork also made several large purchases following the robbery including, among other things, a gas grill, a chest freezer, jewelry, a VCR and food.

### C. *Execution of The Search Warrant*

Police received an anonymous tip that Cork was involved in the two bank robberies. They obtained and executed a search warrant on Cork's residence and his white van. Police recovered from the residence: a gray sweatshirt, a nylon blue windbreaker, gray sweat-pants, mirrored sunglasses, dark tennis shoes with a white stripe, and a moustache and beard hair coloring kit. They recovered $2 bills, silver certificates and mutilated bills similar to those taken from the bank in Manistique. Police also recovered receipts from purchases made by Cork directly following both the December 8 and April 29 robberies. Cork told police that he made the purchases with money from disability checks and employment checks from Zee's Medical.

Cork also told police, during their execution of the search warrant, that on the day of the April 29 robbery, he was visiting with Terry Bond, a friend who ran an automobile shop. Terry Bond testified at trial that Cork did not visit with him on the morning of April 29, and that Cork approached him after the robberies in an attempt to "convince" him that he had in fact seen Cork that day.

During the search, Cork asked police whether "there were any guarantees [they could give him] if he admitted to the bank robberies." The officers responded that they could not provide him with any guarantees. Also during the search, one of the officers, Officer Golat, said to Cork "you are the person responsible for robbing the banks in Iron Mountain and Manistique." Cork did not respond to Golat but looked at the floor and remained silent. Police arrested Cork and he was charged with the December 8 and April 29 robberies.

### D. *The Trial*

At trial the government presented testimony from twenty-four witness and intro-

duced evidence including the clothes and items seized from Cork's residence. During the testimony by the bank teller's from each bank, a mannequin, used as a demonstrative exhibit, was dressed in clothes found in Cork's home. The tellers were asked to determine whether the clothing worn by the mannequin was similar to that worn by the robber. Each witness testified that the clothes resembled those worn by the man who entered the bank on the day of the robberies. An expert witness also used the clothed mannequin to illustrate similarities between the clothes worn by the man photographed during the robberies and those found at Cork's residence.

Cork testified on his own behalf at trial and he denied any involvement in the robberies. He also testified that on the morning of April 29 he visited Terry Bond. He explained that he made purchases after the each robbery with money he obtained following a lawsuit. He testified that he kept the money in cash at his home in a gym bag. He also testified that when Officer Golat accused him of committing the robberies during the execution of the search warrant he denied any part in the crimes.

Also testifying on Cork's behalf was Norman Sauer, a professor of anthropology at Michigan State University. Sauer testified that he reviewed the tapes from the bank surveillance cameras and offered the opinion that no one could make a visual identification from those tapes. However, he also could not exclude the possibility that Cork was the person on the tapes.

The jury found Cork guilty of committing both the December 8 and April 29 bank robberies. At sentencing the trial judge determined that Cork had committed perjury during the trial and therefore assigned a two-level enhancement for obstruction of justice to his sentence, as required by U.S.S.G. § 3C1.1. The court stated "I find by a preponderance of the evidence that Mr. Cork gave false testimony as to material facts in the case in that he testified that he was not in the banks at the time of he robberies and that he did not rob the banks. I find that he was in the banks at the time of the robberies and that he did rob that banks." The court sentenced Cork to a seventy-month term of imprisonment, three years of supervised release and required him to pay $14.225 in restitution.

## II. DISCUSSION

Cork contends that his conviction should be overturned on insufficiency of evidence grounds. He also argues that the court erred when it allowed the government to use a mannequin as a demonstrative exhibit and in allowing Officer Golat to testify about Cork's pre-arrest silence. Cork challenges the District Court's finding that he committed perjury and the application of the obstruction of justice sentencing enhancement under United States Sentencing Guidelines § 3C1.1. Cork also contends that he received ineffective assistance of counsel during the trial.

### A. Sufficiency of the Evidence

In order to prove a violation of 18 U.S.C. § 2113(a), the government must establish that a defendant used "intimidation, force or violence" in an attempt to take an item of value belonging to, or in the possession of, a bank, credit union, or any savings and loan association covered by the Federal Deposit Insurance Company ("FDIC"). See 18 U.S.C. § 2113(a). Cork contends that his conviction should be reversed because there was insufficient evidence to establish that he was the individual responsible for each robbery, that he used intimidation or force, or that each bank was covered by the FDIC. In reviewing a conviction for sufficiency of the evidence,

we view the evidence in the light most favorable to the prosecution and must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Samuels,* 308 F.3d 662, 666 (6th Cir.2002).

### 1. *Identification*

■ Cork argues that no person or teller from inside the bank was able to identify him and that, therefore, there was insufficient evidence tying him to the crimes. Circumstantial evidence alone may support a conviction in the absence of eyewitness testimony. *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989). We "will reverse a judgment for insufficiency of evidence only if th[e] judgment is not supported by substantial and competent evidence upon the record as a whole, and that this rule applies whether the evidence is direct or wholly circumstantial." *Id.* (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)). Examining the record as a whole, and viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence tying Cork to each of the robberies.

Cork was identified by Ms. Defiore, an Iron Mountain resident who stated that Cork was the man she observed on the street directly after the December 8 robbery. Cork's stepson, LaFavre, also identified Cork from the bank surveillance photographs taken during the December 8 incident.

Testimony also revealed that Cork was experiencing financial difficulties, yet he was able to make several large purchases after both the December 8 and April 29 robberies. Clothing found at his residence matched the type of clothing worn during each of the robberies. Additionally, police found items that matched those taken from the bank on April 29; two-dollar bills, silver certificates and mutilated money. The prosecution also presented evidence that Cork was in the vicinity of each of the banks prior to each robbery. Additionally, Cork's alibi evidence related to the April 29 robbery was directly contradicted by Terry Bond.

After viewing the evidence in the light most favorable to the government, we find that there was more than sufficient evidence presented for a jury to conclude that Cork was the person who committed each of the robberies.

### 2. *Intimidation*

"Intimidation in the context of 18 U.S.C. § 2113(a) is defined as an act by a defendant 'reasonably calculated to put another in fear, or conduct and words … calculated to create the impression that any resistance or defiance by the [individual] would be met by force.'" *United States v. Waldon,* 206 F.3d 597, 606 (6th Cir.2000) (quoting *United States v. Lajoie,* 942 F.2d 699, 701 n. 5 (10th Cir.1991)) (finding it immaterial that the defendant did not brandish a weapon when he asked for money and told everyone to lie down on the floor); *see also United States v. Perry,* 991 F.2d 304, 310 (6th Cir.1993). Whether a person used intimidation is determined by an objective test: "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *United States v. Gilmore,* 282 F.3d 398, 402 (6th Cir.2002). "Demands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *Id.*

Cork argues that the government failed to present sufficient evidence that he used

intimidation in the commission of the robberies. We disagree. Each teller testified that Cork handed her a note that demanded money and held his hand in his pocket as if he carried a weapon.[2] The evidence presented was sufficient to establish that a reasonable teller could infer a threat of bodily harm if she did not comply with the defendant's demands.

### 3. Federal Insurance

Cork's final argument, that the government failed to establish that the banks were insured by the FDIC, is without merit. The government presented testimony from bank employees and introduced into evidence, without objection, each bank's FDIC certificate. This form of evidence is sufficient to establish that a bank is federally insured. *See United States v. Wood,* 780 F.2d 555, 557 (6th Cir.1986) (explaining that presentation of a certificate of insurance and a statement by a bank branch manager that the branch was FDIC-insured at the time of trial is sufficient evidence of FDIC insurance).

### B. Admission of Evidence

Cork challenges the District Court's admission of rebuttal testimony from Officer Golat regarding Cork's pre-arrest silence. He also challenges the District Court's decision to allow the prosecution to use a mannequin dressed in clothes found at his home with certain bank witnesses.

Generally, we review a district court's admissibility decisions for abuse of discretion. *See United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir.1997). However, where, as here, a defendant fails to raise an objection at trial, admissibility decisions challenged on appeal are reviewed for

plain error. *See United States v. Wilson,* 168 F.3d 916, 920 (6th Cir.1999). Plain error exists when the claimed error is "obvious or clear ... the error affected [the] defendant's substantial rights; and ... this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Schulte,* 264 F.3d 656, 660 (6th Cir.2001).

### 1. Cork's Pre–Arrest Silence

The government may not use "a defendant's pre-arrest silence as substantive evidence of guilt [as to do so] would greatly undermine the policies behind the privilege against self-incrimination while adding virtually nothing to the reliability of the criminal process." *Combs v. Coyle,* 205 F.3d 269, 285–86 (6th Cir.2000). However, a defendant's pre-arrest silence may be introduced at trial to impeach him when he chooses to take the stand and testify on his own behalf. *Id.* at 285 (noting that when the government uses a defendant's pre-arrest silence for purposes of impeachment, the policies behind the privilege against self-incrimination are not implicated); *see also Jenkins v. Anderson,* 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) ("Attempted impeachment on cross-examination of a defendant ... may enhance the reliability of the criminal process.").

■ At trial Cork testified that he told the police that he did not commit the robberies in question. As rebuttal evidence, the government offered testimony from Officer Golat, who stated that after he accused Cork of committing the crimes, Cork looked at the ground in silence. This

---

**2.** In the December 8 robbery the note handed to the teller stated: "I need you to put all the money in your drawer in a paper bag.... And if you make any attempt to contact any-

one you will be harmed." The April 29 note demanded: "Give me all your money and put it in a bag."

testimony was used to directly rebut, and impeach, Cork's testimony regarding what he told police, and, accordingly was not admitted in error.

### 2. *Mannequin as A Demonstrative Exhibit*

At trial, the government used a mannequin as a demonstrative exhibit with several of its witnesses. The government dressed the mannequin in clothes found at the defendant's residence and it asked witnesses to view the mannequin and determine whether the clothing it wore was similar to the robber's. For example, the prosecutor asked Ms. MacNamara, a teller from the Manistique Bank, to view the mannequin and "react to [it] as we've put [the clothes] together as it bore on the person who came through the door?" Ms. McNamara responded "It looks very familiar to me." The government's expert also testified using the mannequin to describe points of similarity between the clothing found in the defendant's residence and the clothing seen in the bank surveillance photographs.

■ Cork contends that the District Court erred in allowing the government to use the mannequin because it was highly prejudicial and had no probative value. Cork relies on one case to support his argument, *United States v. Gaskell,* 985 F.2d 1056 (11th Cir.1993). In *Gaskell,* the government charged the defendant with manslaughter, claiming that he had shaken his infant daughter resulting in her death. The government's expert witness used a rubber infant mannequin to demonstrate shaken baby syndrome. The Eleventh Circuit found that the demonstration was not sufficiently similar to circumstances of the infant's death to afford a fair comparison. *Gaskell* dealt with the difference in the courtroom experiment (violent shaking of the doll) to the actual, and lesser,

amount of force that would affect a real infant. The case does not stand for the proposition, as defendant suggests, that the use of a demonstrative mannequin is prejudicial in all circumstances.

Several courts have found that a defendant may be required to wear items of clothing allegedly worn during a robbery. In *United States v. Love,* 692 F.2d 1147, 1151–52 (8th Cir.1980), the court upheld the district court's decision to require the defendant to wear a jacket and hat allegedly worn during a robbery. While the defendant wore the clothing, the jury viewed the surveillance photographs taken during the robbery comparing the defendant to the individual in the photographs. *Id.* at 1152. The Eighth Circuit found that the district court had not abused its discretion in admitting the evidence. *Id.; see also United States v. Murray,* 523 F.2d 489, 492 (8th Cir.1975) (finding no error by the district court in requiring the defendant to wear a wig to "assist the jury in determining whether he was in fact the person who had been photographed participating in the robbery").

Cork has not demonstrated that the District Court committed plain error in allowing witnesses to view the mannequin as an aid in visualizing the appearance of the person described as robbing the banks.

### C. *Sentencing Enhancement Under U.S.S.G. § 3C1.1*

A district court is required to enhance a defendant's sentence if it finds that he obstructed justice. *See* U.S.S.G. § 3C1.1. Obstruction of justice requiring a sentencing enhancement includes "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n.4(b)). The district court below made a finding that Cork committed perjury by testifying that "he was not in the banks at the time of the robberies and that he did not rob the

banks." The court concluded that Cork "was in the banks at the time of the robberies and that he did rob that banks." We review the district court's factual findings under a clearly erroneous standard. *See United States v. Mise,* 240 F.3d 527, 531 (6th Cir.2001). The district court's conclusion "that a given set of facts constitutes obstruction of justice is a mixed question of law and fact which we review *de novo.*" *United States v. Chance,* 306 F.3d 356, 389 (6th Cir.2002).

Cork contends that the district court did not make a specific finding of perjury and that it penalized him for testifying at trial and maintaining his innocence. It is clear that a court may not rely on a guilty verdict alone in applying an obstruction enhancement for perjury. *See Sassanelli,* 118 F.3d at 500. The district court is required to "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same under the perjury definition [the Court has] set out." *Chance,* 306 F.3d at 390 (quoting *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). A district court must: "1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Lawrence,* 308 F.3d 623, 632 (6th Cir.2002). "Where the testimony appears to be 'pervasively perjurious' the trial court is not required to cite the perjury line-by-line if its findings encompass the factual predicates for finding perjury." *Chance,* 306 F.3d at 390 (citing *Sassanelli,* 118 F.3d at 501). Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of

confusion, mistake, or faulty memory." *Dunnigan,* 507 U.S. at 94.

The District Court identified that Cork committed perjury as to a material fact when he stated he was not in either the Iron Mountain or Manistique bank and that he did not commit the robberies. The court made an independent finding that Cork testified under oath untruthfully about his whereabouts and his actions during the robberies. While the court's statements are far from detailed, it did point to the specific material testimony found untruthful, and it found that the defendant committed perjury.

■ The District Court did not err in finding that this testimony amounted to an obstruction of justice. As the application Notes accompanying § 3C1.1 explain, a denial of guilt under oath that constitutes perjury is a proper basis for application of the obstruction of provision. U.S.S.G. § 3C1.1 comment. (n.2). We find that the District Court did not err in finding that Cork's denial of guilt under oath, found by the court to be perjurious testimony, required application of the obstruction of justice sentencing enhancement.

D. *Ineffective Assistance of Counsel*

Cork's final argument on appeal is that his trial counsel was ineffective. On direct appeal, ineffective assistance of counsel claims are reviewed *de novo.* *United States v. Jackson,* 181 F.3d 740, 744 (6th Cir.1999).

■ The government argues that this court should not review Cork's ineffective assistance challenge on direct appeal because it is more properly dealt with by a motion to vacate sentence under 28 U.S.C. § 2255. We noted in *United States v. Shabazz,* 263 F.3d 603, 612 (6th Cir.2001), that we ordinarily do not review claims of ineffective assistance of counsel on direct

appeal because of "the lack of a sufficient record that typically accompanies such a claim to this court on direct appeal." *Id.* However, "[i]f the record is adequate to permit review of counsel's performance ... [the court] will consider the issue even if not raised before the district court." *Id.* A thorough review of the record submitted on appeal leads us to the conclusion that a sufficient record does not exist at this stage to determine whether counsel performed ineffectively. Therefore, we will not consider Cork's ineffective assistance of counsel claim on direct appeal.

### III. *CONCLUSION*

For the reasons set forth above, we AFFIRM Cork's judgment of conviction on all counts and the application of the sentencing enhancement for obstruction of justice.