**UNITED STATES of America,
Plaintiff,**

v.

**Michael R. KNUTSON, Defendant.**

No. 4:07–cr–00228.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 22, 2008.

lect boarding fees under these circumstances, when Folkers was actively seeking the dog's return to him.

Robert C. Dopf, Urbandale, IA, B. John Burns, III, James F. Whalen, Federal Public Defenders Office, Des Moines, IA, for Defendant.

Andrew H. Kahl, Clifford D. Wendel, United States Attorney's Office, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court are Michael R. Knutson's ("Defendant") Motion to Set Aside Verdict and Motion for New Trial. Clerk's Nos. 223, 225. Defendant filed briefs in support of these motions on September 12, 2008 and September 13, 2008 respectively. Clerk's Nos. 224, 226. On September 19, 2008, the Government filed two responses opposing Defendant's requests. Clerk's Nos. 227, 228. The matters are fully submitted.

## I. PROCEDURAL BACKGROUND

On June 25, 2008, a grand jury returned a superseding indictment charging Defendant with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and two counts of carrying a firearm in relation to a violent crime (the respective bank robberies), in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii).[1] Clerk's No. 95. Defendant stood trial on these counts in Des Moines, Iowa beginning on August 25, 2008. Clerk's No. 204. On August 28, 2008, a jury returned a guilty verdict against him on Counts One and Two. Clerk's No. 216. The jury acquitted Defendant on the remaining two counts. *Id.* During trial, the Court denied Defendant's motion for judgment of acquittal made at the close of the Government's case. August 27, 2008 Tr. at 105.[2] Defendant renewed his motion at the conclusion of the presentation of evidence to the jury. *Id.* at 125.

Defendant again renews his motion for judgment of acquittal made at trial and has filed a brief in support of this motion.[3] Defendant provided no specific arguments as to Count One in his pleadings, but Defendant's pleadings do challenge Count Two on the ground that the Government failed to prove the co-conspirator's firearm was, in fact, real. Def.'s Br. in Supp. of Mot. for J. of Acquittal at 6. In the alternative, Defendant moves to have the Court grant him a new trial in the interest of justice on the basis that the jury's verdict is contrary to the weight of the evidence and a product of allegedly erroneous evidentiary and jury instruction rulings made by the Court during trial.[4] *See* Def.'s Br.

---

1. More specifically, Count One charged Defendant with the bank robbery of First Bank in West Des Moines, Iowa on or about May 16, 2007. Clerk's No 95. Count Two charged Defendant with constructively carrying a firearm in relation to the First Bank robbery via a co-conspirator's possession of a firearm during the robbery. *Id.* Count Three charged Defendant with the bank robbery of U.S. Bank in Des Moines, Iowa on or about July 26, 2007. *Id.* Count Four charged Defendant with carrying a firearm during the course of the U.S. Bank robbery. *Id.*

2. All transcript references refer to the daily unedited Realtime transcripts provided to the Court by the court reporter.

3. Defendant's pleadings only explicitly request a judgment of acquittal on Count Two, not Count One. *See* Def.'s Mot. for J. of Acquittal. However, Defendant implicitly requests a judgment of acquittal on Count One as his second motion states, "The evidence presented at trial is insufficient to support the verdicts of guilty rendered by the jury as to counts one and two." Def.'s Mot. for New Trial ¶ 3. As the Government notes, this implicit request is in violation of Local Rule 7, which requires that a motion "contain citations to all statutes or rules under which the motion is made" and that the accompanying brief contains the "grounds for the motion." Nevertheless, in light of the second motion made at trial and the Government's arguments on the issue, the Court will overlook the rule infraction and construe Defendant's pleadings to also include a sufficiency challenge to Count One.

4. Again, Defendant's pleadings fail to expressly allege that the verdict is against the weight of evidence. Defendant's brief relating to his Motion for a New Trial merely argues that certain incorrect evidentiary rulings, as well as two erroneous jury instruction rulings, prejudiced him. Curiously, the brief does not even request a new trial for Count Two. How-

in Supp. of Mot. for New Trial.

## II. ANALYSIS

### A. *Motion for Judgment of Acquittal*

This Court must enter a Judgment of Acquittal if the evidence presented at trial is insufficient to sustain a conviction. Fed. R.Crim.P. 29(a); *United States v. Water,* 413 F.3d 812, 816 (8th Cir.2005). "This standard is 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen,* 491 F.3d 852, 855 (8th Cir.2007) (quoting *United States v. Ellefson,* 419 F.3d 859, 862 (8th Cir.2005)). Although Rule 29 contemplates the occurrence, it is well-settled that "[j]ury verdicts are not lightly overturned." [5] *United States v. Hood,* 51 F.3d 128, 129 (8th Cir. 1995). Therefore, "[a] motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cacioppo,* 460 F.3d 1012, 1021 (8th Cir.2006); *accord United States v. Moore,* 108 F.3d 878, 881 (8th Cir.1997) (instructing that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt").

In considering a motion for judgment of acquittal based on the sufficiency of the evidence presented at trial, the Court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Basile,* 109 F.3d 1304, 1310 (8th Cir.1997). The Court can overturn the jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof' " on one or more of the essential elements of the crime charged. *United States v. Kinshaw,* 71 F.3d 268, 271 (8th Cir.1995) (quoting *United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991)). "This standard applies even when the conviction rests entirely on circumstantial evidence." *United States v. Davis,* 103 F.3d 660, 667 (8th Cir.1996). In reviewing the evidence presented to the jury, it is important to note that " '[t]he evidence need not exclude every reasonable hypothesis except guilt.' " *United States v. Baker,* 98 F.3d 330, 338 (8th Cir.1996) (quoting *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992)). Finally, it is not the Court's role to weigh the evidence or assess the credibility of witnesses, as these tasks belong to the jury alone. *See United States v. Ireland,* 62 F.3d 227, 230 (8th Cir.1995) (observing that the jury has the role of judging the credibility of witnesses and resolving any contradictions in the presented evidence).

Turning to the case at bar, the Government presented ample evidence to the jury from which it could reasonably conclude that Defendant participated in

---

ever, Defendant's Motion for a New Trial does request a new trial on both counts and challenges the sufficiency of the evidence on the counts as discussed *supra. See* Def.'s Mot. for New Trial. As such, the Court will interpret Defendant's pleadings to include a challenge to the weight of the evidence against him.

5. Indeed, to do otherwise would risk displacing the jury as the principle trier of fact, thereby establishing the Court in a role the Constitution expressly delegated to the people. In the sage words of a fellow district court, "[T]he jury is an institution of central importance in our system of government, and courts must jealously guard against encroachments on the jury's province. It is the jury to which the founders of this nation turned to fill the role of impartial fact finder. Its primacy is guaranteed by the United States Constitution, and the American jury system is our most vital day-to-day expression of direct democracy." *United States v. Green,* 346 F.Supp.2d 259, 316 (D.Mass.2004), *vacated and remanded on other grounds by United States v. Pacheco,* 434 F.3d 106 (1st Cir.2006).

the First Bank robbery on May 16, 2007. The Government used the testimony of the First Bank tellers present during the incident, the testimony of agents investigating the case, and surveillance video of the robbery to demonstrate the similarity between Defendant's height and build and the physique of the taller robber, who masked himself during the robbery.[6] Special Agent Jeff Atwood ("Agent Atwood") even testified that the taller robber stood with a hyper-extended knee, just as the Defendant does.[7] August 27, 2008 Tr. at 59, 75. The Government also presented evidence linking Defendant's property to the taller robber. Three tellers testified that Defendant's rather unique black powder weapon was very similar to the pistol the taller robber carried during the inci-

dent.[8] *See* August 25, 2008 Tr. at 129, 146, 153; August 28, 2008 Tr. at 94, 105–08. Additionally, Agent Atwood's testimony and the surveillance video indicated that the taller robber wore distinctive boots bearing a striking resemblance to those seized from Defendant's residence by Special Agent Chris Callaway. August 26, 2008 Tr. at 173–74; August 27, 2008 Tr. at 59.

The Government also produced the testimony of Antonio Sheley, who stated that while he was incarcerated with Defendant, Defendant admitted to committing the bank robbery with James Stenger ("Stenger"). August 27, 2008 Tr. at 31. The Government provided corroborating evidence through Officer Rodrigo Santizo testifying that he found Defendant's black

---

**6.** At the Government's request, the Court required Defendant to stand briefly in order to facilitate the ability of the jury to compare Defendant to the taller robber on the surveillance tapes. Although conceding it is within the discretion of the Court at trial, Defendant now objects to this order in his Motion for a New Trial. Def.'s Mot. for New Trial. ¶ 11. While the Court is unsure of the exact grounds on which Defendant relies because Defendant's accompanying brief fails to discuss this issue, the Court will reiterate that the law is clear on this matter. It is within the discretion of the Court to order a defendant to stand before the jury and even wear items of clothing. *See United States v. Love*, 692 F.2d 1147, 1152 (8th Cir.1980) (stating it was within the trial court's discretion to order a defendant to wear a jacket allegedly worn by the robber); *see also United States v. Murray*, 523 F.2d 489, 492 (8th Cir.1975) (affirming a court's order for defendant to wear a wig).

**7.** Defendant, in his post-trial pleadings, also objects to Agent Atwood's testimony regarding Defendant's hyper-extended knee, claiming it constituted expert testimony that the Government failed to provide proper notice of as required by Federal Rule of Criminal Procedure 16. Def.'s Mot. for New Trial ¶ 9–10. As the Government correctly notes, Defendant not only failed to brief this issue in violation of Local Rule 7 but also failed to timely object

to this testimony at trial. August 27, 2008 Tr. at 75. The objection is thus waived. Further, even if Defendant had not waived his objection, the Court does not believe that a simple comparison between the stance of Defendant and the taller robber in the surveillance tape constitutes expert opinion within the meaning of Federal Rule of Evidence 702. The Court also notes that the admission of this evidence, even if erroneous, could not have produced prejudicial error given the sheer weight of the other evidence in this case. Finally, the Court will not indulge the Government's argument as to constructive notice through Defense counsel being present at James Stenger's trial for the same robbery because Defense counsel was present for only some portions of the trial.

**8.** Chani Carter testified that Defendant's black powder pistol "look[ed] a lot like what was used" even though she could not be certain it was the same weapon. August 25, 2008 Tr. at 129. Likewise, her fellow teller, Frank Sanchez, testified that the weapon "looks very, very similar" to the gun the taller robber used even though he too could not be certain it was the weapon. *Id.* at 146. A third teller, Jean Kristensen, also testified Defendant's weapon looked similar to the gun the robber used. *Id.* at 153.

powder pistol in Stenger's vehicle and Special Agent Paul Castalline testifying that he recovered a sweatshirt from Stenger's room that matched the sweatshirt worn by the shorter First Bank robber. August 26, 2008 Tr. at 106–07, 181. Finally, the Government presented evidence of other similar bank robberies in Mason City, thereby allowing the jury to infer Defendant's guilt if they concluded that the First Bank robbery was part of a larger common scheme or plan.[9] Based upon this evidence, the Court finds that a reasonable jury could have found Defendant guilty on Count One.

■ The Court also finds sufficient evidence in the record for a reasonable jury to conclude that Defendant constructively carried a firearm during the commission of the First Bank robbery. Under 18 U.S.C. § 924(c)(1)(a)(ii), liability will attach if an individual or his co-conspirator brandishes a firearm during and in relation to a violent crime. Defendant's black powder pistol, however, is exempted from the statutory definition of firearm, so the Court can only sustain his conviction if the shorter robber brandished a firearm during the course of the First Bank robbery. *See* 18 U.S.C. § 921(a)(3).

The surveillance tapes and teller testimony leave no doubt that the shorter robber brandished an item that resembled a pistol during the course of the First Bank robbery. Indeed, Defendant's only argument is that the Government failed to meet its burden of proof in showing that the weapon was real and not a toy or replica gun.[10] Def.'s Mot. for J. of Acquittal ¶ 3. To support his argument, Defendant points to the Government's failure to produce the weapon and "each of the bank witnesses" admitted inability to distinguish "a real gun from a fake gun." Def.'s Br. in Supp. of Mot. for J. of Acquittal at 6–7. Defendant also relies on the inability of the surveillance tapes to reveal whether the weapon was real, arguing that the Government's focus on the size of the hole in the end of the barrel is not dispositive because fake guns also have similar features. *Id.* at 8. Defendant further states that the Government cannot rely on Dixie Robinson's ("Robinson") testimony about seeing Stenger with a black 9 mm handgun because the surveillance tapes indicate the gun was silver and because she too does not have the ability to distinguish real firearms from replicas or toys. *Id.* Finally, Defendant cites a First Circuit case that discusses whether a lay witness's testimony alone is sufficient to sustain a conviction under § 924. *See United States v. Kirvan,* 997 F.2d 963, 966 (1st Cir.1993).

While somewhat persuasive, Defendant's argument is foreclosed by recent Eighth Circuit jurisprudence on this very issue. In *United States v. Garcia–Hernandez,* the Eighth Circuit stated that " 'proof that a defendant possessed a firearm may be established solely by eyewitness testimony where the gun is not recovered or introduced a trial.' " 530 F.3d 657, 662 (8th Cir.2008) (quoting *United States v.*

9. Defendant renews his objection to the admission of this evidence, claiming the evidence of the Mason City bank robberies is inadmissible because it is neither intrinsic evidence nor 404(b) evidence. *See* Def.'s Br. in Supp. of Mot. for New Trial at 1–8. The Court disagrees and sees no reason to further revisit this issue after having ruled on the matter from the bench following written submissions and oral arguments by both parties. The Court will note, however, that any claim

of prejudice based on this evidence is purely speculative in light of the fact that the jury acquitted Defendant on the other bank robbery charged in Count Three.

10. In Defendant's brief supporting the judgment of acquittal, Defendant goes so far as to say this is the "the sole issue raised" by Defendant both in the brief and the underlying motion. Def.'s Br. in Supp. of Mot. for J. of Acquittal at 6.

*Anderson,* 78 F.3d 420, 423 (8th Cir.1996)). In *Garcia,* the Eighth Circuit sustained a conviction of a defendant under § 924(c) based solely on the testimony of one lay police informant who stated that he saw a defendant "pick up" a nearby gun. *Id.* at 660, 663. The court went so far as to specifically cite and reject the defendant's argument that the informant's testimony was insufficient "to establish his possession of a firearm because it does not establish the item [the informant] saw was a firearm, and not a toy gun." *Id.* at 663. In rejecting the defendant's argument, the Eighth Circuit cited a Second Circuit case for the proposition that " '[t]he mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility.' " *Id.* (quoting *United States v. Jones,* 16 F.3d 487, 491 (2d Cir.1994)). Based on *Garcia,* the Court finds that the teller's testimony about the shorter robber carrying a weapon, in conjunction with the surveillance tapes and Dixie Robinson's testimony, is more than sufficient evidence for a jury to find that the shorter robber carried a real firearm and that Defendant is vicariously liable.[11] Thus, just as with Count One, the Court finds that a reasonable jury could have found Defendant guilty on Count Two.

### B. *Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The district court is granted broad discretion in passing upon motions for new trial, and its decision is subject to reversal only for a clear abuse of discretion. *See United States v. Bass,* 478 F.3d 948, 951 (8th Cir.2007) ("A district court's 'determination that a new trial should be granted on the ground that the verdict is against the weight of the evidence is entitled to great deference and is reversible only upon a strong showing of abuse.' ") (quoting *King v. Davis,* 980 F.2d 1236, 1237 (8th Cir.1992)). Unlike a motion made for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the Court need not consider the evidence on a Rule 33 motion for new trial in the light most favorable to the Government. Rather, in assessing whether Defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis,* 103 F.3d at 668; *United States v. Lanier,* 838 F.2d 281, 284–85 (8th Cir.1988) (per curiam). As the Eighth Circuit Court of Appeals explained in *United States v. Rodriguez:*

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d 1313, 1316 (8th Cir.1980). The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. We will not reverse the district court's decision absent a clear and manifest abuse of dis-

---

11. The Court will not discuss the *Kirvan* case Defendant cited except to say that it explicitly reserved the question of whether "unembellished lay testimony that 'the robber carried a gun' " would be sufficient to support a jury's verdict of guilt under § 924. *See Kirvan,* 997 F.2d at 966.

cretion. *United States v. Bonadonna,* 775 F.2d 949, 957 (8th Cir.1985); *United States v. Ferguson,* 776 F.2d 217, 225 (8th Cir.1985); *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir.1975). 812 F.2d 414, 417 (8th Cir.1987). The Eighth Circuit has also warned that the authority to grant a Rule 33 motion for new trial "should be used sparingly and with caution." *Lincoln,* 630 F.2d at 1319. Nonetheless, if the Court finds that " 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [the district court] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.' " *United States v. Huerta–Orozco,* 272 F.3d 561, 565 (8th Cir.2001) (quoting *Lincoln,* 630 F.2d at 1319). The district court's discretion in determining that a new trial is warranted "is abused if it does not take into account a matter that should have been given significant weight, gives significant weight to something improper or irrelevant, or 'commits a clear error of judgment.' " *Bass,* 478 F.3d at 951 (quoting *United States v. Dodd,* 391 F.3d 930, 934 (8th Cir.2004)).

■ Defendant argues that he was "denied a fair trial," in part, because the conviction goes against the weight of evidence; however, Defendant fails to articulate any reason for this conclusion outside of directing the Court to his first motion and brief relating to Count Two. Def.'s Mot. for New Trial ¶¶ 3–4. As discussed in the previous section, Defendant's brief requesting a judgment of acquittal argues that since no witness or the videotape could establish whether the shorter robber's gun was real, no reasonable jury could conclude it was anything but a toy or replica. *See* Def.'s Br. in Supp. of Mot. for J. of Acquittal. The Government respond-

ed by arguing, first, that the record supported the conviction on Count One for the reasons the Court articulated in the previous section and, second, by directing the Court to its first resistance for Count Two. Pl.'s Resistance to Def.'s Mot. for New Trial at 4. The substance of the Government's argument in its resistance to the acquittal is that the bank tellers believing the shorter robber had a real gun, the surveillance video capturing the shorter robber's pistol like weapon, Robinson seeing Stenger with a 9 mm handgun shortly after the robbery, and Defendant's use of a functional handgun in the robbery is sufficient for a jury to infer that the shorter robber possessed a real firearm. Pl.'s Resistance to Def.'s Mot. for Judgment of Acquittal at 4.

After a careful review of the record, the Court must concur with the Government's position on both counts, although the Court has some reservations about the weight of the evidence as to Count Two. With respect to Count One, the Government presented ample evidence that Defendant was the taller robber during the First Bank incident as the Government: demonstrated the physical similarities between Defendant and the taller robber; linked Defendant's gun and shoes to the items the taller robber used and wore during the robbery; and linked Defendant to Stenger, who not only had Defendant's black powder gun in his vehicle but also possessed a sweatshirt matching the one that the shorter robber wore during the robbery.

■ In contrast, the Government presented a much weaker case with respect to Count Two. The Government failed to produce the shorter robber's weapon, and each of the First Bank tellers admitted they could not tell the difference between real or fake firearms.[12] Additionally, the

12. Chani Carter agreed that she had no "per- sonal knowledge as to whether [the shorter

surveillance tapes of the incident provide little insight as the cameras were positioned too far away from the shorter robber's weapon to determine it was either a toy or a real gun. Dixie Robinson's testimony is likewise questionable as the 9 mm she saw in Stenger's possession was black, not the silverish color seen in the surveillance tapes, and she also lacks sufficient familiarity with the weapons to readily distinguish between real and fake weapons. *See* August 26, 2008 Tr. at 8, 63–64. Further, the Government's last argument that the Court can infer the shorter robber's weapon is real because Defendant carried a functional gun during the robbery is not very persuasive. Indeed, an equally plausible argument could be made that anyone who takes such care to choose a rather unique firearm that falls within a technical exception to the statutory definition of "firearm" would likely not take the risk of undoing any benefit this would bring by participating in a robbery that involves a pistol meeting the statutory definition. Nevertheless, the Court will not grant a new trial on this issue because the tellers, who unfortunately had an opportunity to view the shorter robber's weapon at close range, thought the shorter robber had a real gun at the time even though they later could not be sure. Their conclusion was at least partially corroborated by Robinson's testimony regarding Stenger's weapon, even though she incorrectly identified the color of the pistol. Therefore, the Court can find no compelling reason to disturb the sound judgement of the jury on this issue.

■. Finally, Defendant argues that he received an unfair trial because of certain allegedly erroneous evidentiary and jury instruction rulings. Since the Court disposed of Defendant's evidentiary objections in the preceding sections, the Court will only focus on the two remaining jury instruction objections. Defendant first "renews his objection to the Court's failure to give Defendant's requested instructions to the degree they are not substantially reflected in the instructions given by the Court." Def. Mot. for New Trial ¶ 5. However, Defendant failed to identify any specific instruction, or part of instruction, that the Court failed to give, let alone explain how this failure to give the instruction prejudiced him. Defendant's generalized objection violates Federal Rule of Criminal Procedure 30(d), which requires a defendant to "articulate the specific errors the trial judge would commit if he failed to give [defendant's] requested instruction." *United States v. Hecht,* 705 F.2d 976, 978–79 (8th Cir.1983) (holding that a defendant failed to preserve error when, at trial, defendant stated he "takes or renews [his] exceptions to the charge so far as the charge does not give in words or in substances the instructions request by Defendant"). Further, in order to entertain Defendant's objection, the Court would be forced into the untenable position of parsing word for word the differences between Defendant's proposed instructions and the final jury instructions, only then to speculate on what, if any, prejudice the difference caused Defendant. This the Court

robber's weapon] was a real gun or a fake gun." August 25, 2008 Tr. at 135. Frank Sanchez likewise admitted that he was not "in any position to make a determination as to whether either or both [of the robber's weapons] were real guns, capable of firing ammunition or whether they were fake guns." *Id.* at 149. Jean Kristensen also stated that she had no way of knowing "whether what

[she was] seeing that looked like handguns were in fact real guns or whether they might [have been] fake or simulated." *Id.* at 163. Even Ms. Poortinga, a fourth teller who was stationed at the window during the robbery, stated she could "probably not" tell the difference between a real and fake firearm. *Id.* at 172.

will not do, and Defendant's first jury instruction objection is overruled.

 Defendant's second objection is to Final Jury Instruction 22A ("22A"), which instructed the jury on how to evaluate the evidence of Defendant's alleged involvement in other crimes, namely the Mason City bank robberies. Although Defendant seemingly admits that 22A is a proper formulation of the law,[13] Defendant nevertheless objects to the instruction because the notes accompanying the model instruction the Court used to fashion 22A state, "This instruction should be given only upon request of the defendant." Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 2.08 n. 1 (2008). The model instructions are, however, only advisory and not binding on the Court. *Id.* at Introduction ("'The Model Instructions ... are not binding on the district court of this circuit, but are merely helpful suggestions to assist the district courts.'") (quoting *United States v. Norton,* 846 F.2d 521, 522 (8th Cir.1988)). Indeed, "[t]he district court has considerable discretion in framing the instructions[,] and '[i]t is sufficient if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction.'" *United States v. Claxton,* 276 F.3d 420, 424 (8th Cir.2002). Since 22A accurately reflects the law and since the Government presented evidence of Defendant's involvement in other crimes, the Court was within its authority to give the instruction, which it did to help clarify a rather nuanced area of the law for the jury. Therefore, Defendant's second jury instruction objection is overruled.

---

**13.** Indeed, Defendant's only substantive objection is a "good faith" challenge to admittedly controlling precedent on the jury's role in evaluating the evidence. Def. Br. in Supp. of a Mot. for New Trial at 9–10.

## III. CONCLUSION

For the reasons discussed above, the Defendant's Motion to set aside the jury's verdict (Clerk's No. 223) and Motion for a New Trial (Clerk's No. 225) are DENIED. The Court sees no basis on which to disturb the jury's verdicts against the Defendant, and no indication that a new trial is required in the interest of justice.

IT IS SO ORDERED.